UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on June 14, 2024

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JASON PALLANTE,<br><br>Defendant. | CRIMINAL NO. 24-CR-<br><br>GRAND JURY ORIGINAL<br><br>VIOLATIONS:<br><br>Counts 1–3:<br>18 U.S.C. § 1341 (Mail Fraud)<br><br>Counts 4–7:<br>18 U.S.C. § 1343 (Wire Fraud)<br><br>FORFEITURE ALLEGATION:<br>18 U.S.C. § 981(a)(1)(C),<br>21 U.S.C. § 853(p); 28 U.S.C. § 2461(c) |

**INDICTMENT**

The Grand Jury charges that:

At times material to this Indictment, on or about the dates and times listed below:

**BACKGROUND**

1. Defendant **JASON PALLANTE** was a resident of Florida or Costa Rica.

2. **PALLANTE** was a serial registrant of websites, having purchased more than 2000 domains. On July 26, 2018, **PALLANTE** purchased the domain americagreatpac.com.

3. The Federal Election Campaign Act of 1971, as amended, Title 52, United States Code § 30101, *et seq.* (the "Election Act"), limited financial influence in the election of candidates for federal office and provided for public disclosure of the financing of federal election campaigns. The Federal Election Commission ("FEC") was the independent federal regulatory agency charged

1

with administering and enforcing federal campaign finance law, including the Election Act. The FEC was headquartered in the District of Columbia.

4. The FEC's mission was to protect the integrity of the federal campaign finance process by providing transparency and fairly enforcing and administering federal campaign finance laws. To that end, the FEC received and made available to the public specific information about the amounts and sources of political contributions to federal candidates and political committees.

5. A Super PAC, also known as an independent expenditure-only committee, was a type of political committee that could receive unlimited contributions from individuals, corporations, labor unions and other PACs for the purpose of financing independent expenditures and other independent political activity. Super PACs were prohibited from making contributions to candidates in the form of coordinated expenditures. Super PACs were required to register with the FEC within 10 days of receiving contributions or making expenditures aggregating more than $1,000 during a calendar year.

6. Under the Election Act, an "independent expenditure" refers to an expenditure for a communication, such as an advertisement through a website, digital device, application, advertising platform, newspaper, TV or direct mail, that: (1) expressly advocated for the election or defeat of a clearly identified candidate; and (2) was not made in cooperation, consultation with, or at the request or suggestion of, any candidate, or his or her authorized committees or agents, or a political party committee or its agents.

7. Super PACs were required to make regular filings with the FEC regarding their contributions, operating expenditures, and independent expenditures.

8. On May 7, 2019, **PALLANTE** registered America Great PAC ("AGPAC") with the FEC. The registration forms stated that AGPAC intended to make only independent expenditures and therefore intended to raise funds in unlimited amounts. Thus, AGPAC was a Super PAC which was not allowed to coordinate with candidates or candidate committees. The Statement of Organization identified **PALLANTE** as the Treasurer, Designated Agent, and Custodian of Records for AGPAC. **PALLANTE** identified an address that provided virtual mailbox services in Washington D.C. as the address for AGPAC.

9. On October 23, 2019, **PALLANTE** opened a bank account for AGPAC at Financial Institution A.

10. On December 11, 2019, **PALLANTE** registered AGPAC as a District of Columbia corporation.

## THE SCHEME TO DEFRAUD

11. Beginning by at least January 1, 2023, and continuing until at least November 25, 2024, in the District of Columbia and elsewhere, the defendant, **PALLANTE**, did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises; specifically, **PALLANTE** solicited contributions from the general public through dozens of different websites, purporting to support different candidates and causes, based on misrepresentations, including, but not limited to that the contributions would be used to support the specific candidate or cause advertised on the website. In reality, funds contributed through any of these websites were commingled into the AGPAC bank account and then primarily transferred to **PALLANTE**'s personal bank accounts or used to generate additional contributions to AGPAC. These contributions were not used to support the specified candidates or causes.

## PURPOSE OF THE SCHEME

12. It was a purpose of the scheme for the defendant, **PALLANTE**, to enrich himself by soliciting and obtaining contributions under false pretenses from supporters of various political candidates and causes.

## MANNER AND MEANS

13. The manner and means by which the defendant, **PALLANTE**, and others carried out the scheme included, but were not limited to, the following:

   a. Creating websites that appeared to support and be affiliated with candidates for office, their official campaigns, as well as specified political and charitable causes;

   b. Misrepresenting how contributions would be used;

   c. Using virtual addresses to suggest AGPAC and the websites were based in Washington, D.C.;

   d. Accepting and depositing checks made out to specific candidates and specific candidates' campaigns; and

   e. Commingling all contributions, despite how or where they were raised, into a single AGPAC bank account, and spending them on personal expenses and to perpetuate the scheme.

## ACTS IN FURTHERANCE OF THE SCHEME

### AGPAC's 2023 Activities

14. Throughout the 2024 presidential primary season, which began in early 2023, **PALLANTE** purchased websites purporting to support multiple candidates for President. **PALLANTE** purchased at least fourteen websites with domains purporting to support Nikki Haley, including nikkihaleydonations.com and supportnikkihaley2024.com. Additionally, **PALLANTE** purchased at least twenty-seven websites with domains purporting to support Ron

4

DeSantis, at least nine websites with domains purporting to support Mike Pence, at least seven websites with domains purporting to support Tim Scott, and at least ten websites with domains purporting to support Vivek Ramaswamy. Further, **PALLANTE** controlled at least twenty-eight websites purporting to support Donald Trump.

15. **PALLANTE** or his agents designed many of the websites to appear affiliated with a specific candidate or a specific candidate's campaign.

16. On supporttimscott.com, **PALLANTE** included photographs of Scott and first-person language, such as "Join me in the Fight for a Better Future" and "Unite with Me":



Above: image from supporttimscott.com

17. On trumpdonations.com, the language used by **PALLANTE** or his agents ask visitors to "Join My Movement" and "Support Me Now."

5

18. On truedesantisleader.com, **PALLANTE** or his agents used DeSantis's campaign logo and font. Popup banners asked the viewer to "Support Ron DeSantis' Campaign" and to "donate to the campaign":



Above: image from truedesantisleader.com

19. Similarly, on nikkihaleydonation.com, **PALLANTE** or his agents used a photograph of Haley directly from official campaign materials, the same font as the campaign's website, and phrases implying that the website was affiliated with the campaign, such as "Join Nikki Haley for President" and "Join Nikki Haley's Campaign Today":



Above: image from Nikkihaleydonation.com

6

 

**Above: images from Nikki Haley's official campaign website**

20. **PALLANTE** or his agents included forms on the websites for visitors to fill out if they wished to volunteer or receive text messages from the candidate that was the subject of the website. When visitors filled out these forms, **PALLANTE** received an email with their information. AGPAC did not organize or host any volunteer events. AGPAC did not have the authority or capability to send text messages on behalf of a specific candidate.

21. **PALLANTE** included Washington, D.C., addresses on the website as the headquarters for AGPAC. **PALLANTE** contracted with businesses at these addresses that provided AGPAC with a mailing address and a phone number and opened, scanned, and forwarded all mail sent to AGPAC. One of these businesses was Virtual Office A.

22. Virtual Office A received checks in the mail in Washington, D.C., from contributors to AGPAC. Virtual Office A scanned the mail, including checks, and sent them to **PALLANTE** via email. **PALLANTE** then deposited the checks using mobile deposit into AGPAC's bank account with Financial Institution A.

23. On October 31, 2023, **PALLANTE** used AGPAC money to purchase donategivenewsom.com, aocpolitican.com, aocdonations.com, democratpolitician.com, gavinnewsomdonations.com, and progressivelifeactions.com.

24. On December 6, 2023, in response to an inquiry, **PALLANTE** sent an email to Virtual Office A directing Virtual Office A to accept all mail received addressed to Ramaswamy, DeSantis, Haley, Scott, and Trump on behalf of AGPAC.

25. From January 1, 2023, through December 31, 2023, **PALLANTE** commingled all funds received from his various websites in the AGPAC account at Financial Institution A, regardless of the candidate the website claimed to support. During the same period, all checks received were commingled in the AGPAC account at Financial Institution A, regardless of whether the check was addressed to a specific candidate or identified a specific candidate in the memo line.

26. From January 1, 2023, through December 31, 2023, **PALLANTE** spent approximately $6,988.06 money directly from the AGPAC account to purchase or renew his registration of domains, including humanhairwigsale.com, buyrealhair.com, datechristians.org, gunsknifesweapons.com, realestatesalescostarica.com, and partyhousecostarica.com. **PALLANTE** reported these expenses to the FEC as "Website Domain Hosting / Advertising."

27. From January 1, 2023, through December 31, 2023, **PALLANTE** reported to the FEC that AGPAC received $237,259.53 in contributions. AGPAC's account at Financial Institution A received approximately $237,865.73 in contributions during the same period. During that period, **PALLANTE** transferred a net total of $162,100 from AGPAC's account at Financial Institution A to **PALLANTE**'s other business entities or personal accounts. During that period, **PALLANTE** reported to the FEC that AGPAC made no independent expenditures.

### AGPAC's 2024 Activities

28. After the Republican presidential primary field narrowed to only Trump and Haley on January 21, 2024, **PALLANTE** continued operating websites supporting each of these two remaining candidates. **PALLANTE** solicited and received numerous contributions through

websites purporting to support Haley and advocating for her to defeat Trump. **PALLANTE** continued commingling contributions into a single account at Financial Institution A.

29. On January 12, 2024, **PALLANTE** received a cease-and-desist letter from the Haley campaign related to votenikkihaley2024.org, requesting that **PALLANTE** delete the website and refund any contributions. **PALLANTE** did not respond to the letter, but he deactivated votenikkihaley2024.org. However, despite the campaign's request, **PALLANTE** continued to solicit contributions via other websites purporting to support Haley, such as nikkihaleydonation.com, until Haley dropped out of the race on March 6, 2024.

30. From January 1, 2024, through June 30, 2024, **PALLANTE** spent approximately $2,549.04 directly from the AGPAC account to purchase or renew his registration of domains, including emsworkers.com, facebookdemons.com, edocsigns.com, ghostgunsupplies.com, shopghostguns.com, debtfreecollections.com, and mygirlmodels.com. **PALLANTE** reported these expenses to the FEC "Website Domain Hosting / Advertising."

31. From January 1, 2024, through November 25, 2024, **PALLANTE** reported to the FEC that AGPAC received $589,302.09 in contributions. However, AGPAC's account at Financial Institution A received approximately $483,098.54 in contributions from January 1, 2024, through November 25, 2024. The majority of the contributions **PALLANTE** received in 2024 came from websites purporting to support Haley, but **PALLANTE** made no independent expenditures or contributions in support of Haley. From January 1, 2024, through November 25, 2024, **PALLANTE** transferred a net total of $334,100 from AGPAC's account at Financial Institution A to **PALLANTE**'s other business entities or personal accounts. From January 1, 2024, through November 25, 2024, **PALLANTE** reported to the FEC that AGPAC made no independent expenditures and no contributions to federal candidates or committees.

### Contributor 1

32. On June 6, 2023, Virtual Office A received a $50 check made out to the "DeSantis Campaig[n]" from Contributor 1. Virtual Office A sent the check to **PALLANTE** via email on June 6, 2023. **PALLANTE** deposited the check into AGPAC's account on June 7, 2023.

### Contributor 2

33. Contributor 2 made a $50 contribution via nikkihaleydonation.com on February 22, 2024, believing the money would be spent in support of Haley's presidential campaign.

34. On February 26, 2024, **PALLANTE** received an email from Contributor 2 requesting **PALLANTE** refund the $50 contribution because Contributor 2 was concerned the money may be used for candidates other than Haley. **PALLANTE** did not respond.

35. On March 14, 2024, **PALLANTE** received another email from Contributor 2, explaining they "felt defrauded by the structure" and requesting a refund. **PALLANTE** responded on March 14, 2024, falsely claiming that he could not refund the money because the "funds where [sic] already used for the candidate Nikki Haley." **PALLANTE** knew that this contribution had not been used to support Haley. **PALLANTE** refunded the contribution after Contributor 2 threatened to report **PALLANTE** to the FEC.

### Contributor 3

36. On February 26, 2024, **PALLANTE** received Contributor 3's information through nikkihaleydonation.com, after Contributor 3 filled out the form to receive alerts from the Haley campaign. **PALLANTE** communicated via email with an agent of Contributor 3 and provided the information to wire transfer funds to AGPAC.

37. On February 29, 2024, **PALLANTE** received a $250,000 wire transfer from Contributor 3 to AGPAC's account with Financial Institution A.

38. On March 5, 2024, **PALLANTE** transferred $100,000 from AGPAC's account at Financial Institution A to **PALLANTE**'s personal accounts. **PALLANTE** reported this transfer to the FEC as "Video Production/Digital Marketing Efforts."

### Contributor 4

39. On January 23, 2024, **PALLANTE** received a $103 contribution from Contributor 4—a Washington, D.C. resident—through one of **PALLANTE**'s websites purporting to support Haley. Contributor 4 intended for their contribution to be used to support Haley's campaign and would not have contributed if they knew it was going to AGPAC.

### Contributor 5

40. On January 29, 2024, **PALLANTE** received a $103 contribution from Contributor 5—a Washington, D.C. resident—through one of **PALLANTE**'s websites purporting to support Haley. Contributor 5 intended for their contribution to be used to support Haley's campaign and would not have contributed if they knew it was going to AGPAC.

### Contributor 6

41. On February 27, 2024, **PALLANTE** received a $250 contribution from Contributor 6—a Washington, D.C. resident—through one of **PALLANTE**'s websites purporting to support Haley. Contributor 6 intended for their contribution to be used to support Haley's campaign and would not have contributed if they knew it was going to AGPAC.

### **COUNTS ONE THROUGH THREE**

42. Paragraphs one through forty-one are realleged.

43. On or about the dates set forth below, in the District of Columbia and elsewhere, **PALLANTE**, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses,

representations, and promises, knowingly caused to be placed in a post office and authorized depository for mail matter, the following matters and things to be sent and delivered by the Postal Service, and knowingly deposited and caused to be deposited such matters and things to be sent and delivered by private and commercial interstate carrier, and knowingly caused to be delivered by mail and such carriers according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, such matters and things:

| Count | Date | Mailed From | Mailed to | Description |
|---|---|---|---|---|
| 1 | 5/30/2023 | Alligator Point, Florida | Washington, D.C. | $50 personal check from Contributor 1 made out to the "Desantis Campaig[n]" |
| 2 | 8/7/2023 | Mount Pleasant, Michigan | Washington, D.C. | $10 personal check made out to Mike Pence |
| 3 | 11/15/2023 | El Dorado, Arkansas | Washington, D.C. | $100 personal check made out to Nikki Haley America Great PAC |

**(Mail Fraud, in violation of Title 18, United States Code, Section 1341)**

### COUNTS FOUR THROUGH SEVEN

44. Paragraphs one through forty-one are realleged.

45. On or about the dates set forth below, in the District of Columbia and elsewhere, **PALLANTE**, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowingly and intentionally transmitted and caused to be transmitted writings, signs, signals, pictures, and sounds, by means of the following wire communications in interstate commerce:

| Count | Approximate Date | Description |
|---|---|---|
| 4 | December 6, 2023 | Email from **PALLANTE** to Virtual Office A in Washington, D.C. directing Virtual Office A to accept all mail addressed to Vivek Ramaswamy, Ron DeSantis, Nikki Haley, Tim Scott, and Donald Trump |
| 5 | January 23, 2024 | $103 contribution from Contributor 4 to AGPAC via website purporting to support Haley |
| 6 | January 29, 2024 | $103 contribution from Contributor 5 to AGPAC via website purporting to support Haley |
| 7 | February 27, 2024 | $250 contribution from Contributor 6 to AGPAC via nikkihaleydonation.com |

(Wire Fraud, in violation of Title 18, United States Code, Section 1343)

## FORFEITURE ALLEGATION

46. Upon conviction of any of the offenses alleged in Counts One through Seven, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States also will seek a forfeiture money judgment against the defendant in an amount equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

47. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value

of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

A TRUE BILL

FOREPERSON

*Matthew M. Graves/jph*

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

*Corey Amundson*

CHIEF, PUBLIC INTEGRITY SECTION
U.S. DEPARTMENT OF JUSTICE